## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**ANTONIO LEE O'BANNON**                                                    **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 3:24-CV-331-CRS**

**K.C.P.C. et al.**                                                        **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Antonio Lee O'Bannon, proceeding *pro se* and *in forma pauperis*, initiated this 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, Plaintiff's claims will be dismissed.

### I. STATEMENT OF CLAIMS

Plaintiff, who states that he is a "202C patient"[1] at Kentucky Correction Psychiatric Center (KCPC), sues KCPC and two KCPC employees, caseworker Ron Jackson and Officer Matthew Douglas[2] in their individual capacities. He alleges that he was told by KCPC's Director that KCPC is a hospital and that he is a patient, not a prisoner. Nevertheless, he states:

> I am being locked down[,] patted down[,] and room searched everyday all day. I have been at KCPC since 01/25/23 getting patted down and frisked and room searched daily, sometimes strip searched. Locked down in a single cell by officer dorman captain clark. These officers also take my legal mail and Ron Jackson reads my legal mail and sometime never bring my legal mail back. And on 05/14/24 officer douglas Matthews have been performing uncomfortable pat downs. His pat downs consist of caressing/stroking me down slow when performing his pat downs. I feel that officer matthews pat downs are uncomfortable and in a sexual manner.

---

[1] "202C" refers to "recently enacted KRS Chapter 202C[ ] [which] codif[ies] the [involuntary] commitment process" in Kentucky. *M.L.S. v. Edwards*, No. 2022-SC-0365-MR, 2023 WL 4037565, at *1 (Ky. June 15, 2023) (footnote omitted).

[2] The Court notes that in the caption and the Defendants portion of the complaint, Plaintiff refers to this Defendant as "Matthew Douglas." However, the tendered summons refers to "Douglas Matthews."

As relief, Plaintiff requests monetary damages and "to stop all lock downs and room searches."

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. *See* 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 608. Upon review, this Court must dismiss a case at any time if the Court determines that the action is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id*. at 327.

When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), this duty

2

to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

*1. Defendant KCPC*

"[T]he Eleventh Amendment 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments.'" *Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993)); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-47 (1993). Thus, "because Kentucky has not waived its Eleventh Amendment immunity and Congress has not abrogated state sovereign immunity under section[] . . . 1983," Plaintiff's claim against the KCPC cannot proceed. *See, e.g.*, *Burnett v. Ky. Corr. Psychaitic Ctr.*, No. 0:16-CV-117-HRW, 2016 WL 6780327, at *3 (E.D. Ky. Nov. 15, 2016) ("[A]s a division of the Commonwealth of Kentucky's Cabinet for Health and Family Services, the KCPC is entitled to . . . immunity from suit and Eleventh Amendment protection from § 1983 claims for damages[.]"). Plaintiff's claim against the KCPC must also be dismissed because the KCPC, as a state agency, is not a "person" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Thus, the Court will dismiss Plaintiff's claims against Defendant KCPC for failure to state a claim upon which relief may be granted and as seeking monetary relief from a defendant immune from such relief.

### 2. Lock downs

Plaintiff alleges that he is subjected to being locked down in a single cell.

The Supreme Court has stated, "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982); *see Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) ("[B]ecause an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply."). "'The rights of patients in psychiatric hospitals . . . arise under the Fourteenth Amendment," which provides civilly committed individuals and other detainees 'at least the same level of constitutional protection as the Eighth Amendment does to prisoners.'" *Martinez v. Neb. Dep't of Health & Hum. Servs.*, No. 8:22CV184, 2022 WL 2754802, at *2 (D. Neb. July 14, 2022) (quoting *Nelson v. Shuffman*, 603 F.3d 439, 446 n.3 (8th Cir. 2010) (citation omitted)).

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979), within the bounds of professional discretion. *Youngberg*, 457 U.S. at 321–22. In *Youngberg*, the Supreme Court held that civilly committed persons' constitutionally protected interests must be balanced against the reasons put forth by the State for restricting their liberties. *Youngberg*, 457 U.S. at 321. Additionally, "[t]he Constitution is not concerned with *de minimis* restrictions on

patients' liberties." *Vanderpool v. Sharp*, No. CIV.A. 10-5082 WJM, 2011 WL 941343, at *7 (D.N.J. Mar. 15, 2011) (citing *Youngberg*, 457 U.S. at 320).

Courts have held that placement of a civilly committed sexually violent predator (SVP) in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. *See Deavers v. Santiago*, 243 F. App'x 719, 721 (3d Cir. 2007) (applying *Sandin v. Conner*, 515 U.S. 472 (1995), to segregated confinement of civilly committed SVPs); *Thielman v. Leean*, 282 F.3d 478, 485-86 (7th Cir. 2002) (same). Mere "placement in a segregated unit within a prison facility is not, in and of itself, a constitutional violation[.]" *Anderson v. DaCosta*, No. CIV.A. 10-5835 PGS, 2011 WL 2223713, at *7 (D.N.J. June 1, 2011) (civilly committed plaintiff under Sexually Violent Predators Act).

In *J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020)), the Sixth Circuit held that the placement in solitary confinement of a juvenile pretrial detainee with "'documented mental health issues' can amount to excessive discipline in violation of [the juvenile's] Fourteenth Amendment substantive due process rights." *Ingram v. Zamenski*, No. 22-10434, 2024 WL 3270496, at *6 (E.D. Mich. June 5, 2024) (quoting *J.H.*, 951 F.3d at 719), *report and recommendation adopted*, 2024 WL 3262590 (E.D. Mich. July 1, 2024). In doing so, the Sixth Circuit was mindful of the juvenile's age (14), his mental health history, and "the nature and duration of [the] segregation." *J.H.*, 951 F.3d at 718–19 (citing *Williamson v. Stirling*, 912 F.3d 154, 180 (4th Cir. 2018)). Fourteen-year-old J.H. was placed in solitary confinement in a small cell with no contact with other juveniles for three weeks. In finding that J.H.'s Fourteenth Amendment rights had been violated, the Sixth Circuit stated that "'[t]here is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects.'" *J.H.*, 951 F.3d at 719 (quoting *Williams v. Sec'y Pa.*

*Dep't of Corrs.*, 848 F.3d 549, 566 (3d Cir. 2017) (quoting Craig Haney & Mona Lynch, <u>Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement</u>, 23 N.Y.U. Rev. L. & Soc. Change 477, 531 (1997)).

Here, Plaintiff's bare allegation that he is subjected to lockdowns in a single cell does not state a constitutional claim.  Nothing in the complaint suggests that Plaintiff was subjected to an extreme deprivation of liberty due to the duration of the lockdown or its nature.  *See, e.g.*, *Williamson*, 912 F.3d at 180 ("[A] reasonable factfinder could conclude that [pretrial detainee's] three-and-a-half years of solitary confinement were so excessive relative to his infractions — and the defendants so arbitrary in their actions — that Williamson suffered unconstitutional punishment[.]").  Consequently, Plaintiff fails to state a § 1983 claim regarding alleged lockdowns.

### 3. Cell searches

Plaintiff alleges that his room is searched daily.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. CONST. amend. IV.

Courts faced with the question of what expectation of privacy civilly committed persons have used the standard applied to pretrial detainees.  *See Swearengin v. Chamberlain*, No. 4:22-CV-403 SRW, 2022 WL 16527241, at *18 (E.D. Mo. Oct. 28, 2022) (and cases cited therein).  In *Bell*, 441 U.S. at 557, the Supreme Court upheld the constitutionality of unannounced, warrantless room searches in a facility housing pretrial detainees reasoning that "[i]t is difficult to see how the detainee's interest in privacy is infringed by the room-search rule.  No one can rationally doubt that room searches represent an appropriate security measure[.]"[3]  Accordingly, Plaintiff fails to

---

[3] Even voluntarily committed psychiatric patients, while entitled to some protection under the Fourth Amendment, do not have an expectation of privacy equal to an individual in society generally.  *Aiken v. Nixon*, 236 F. Supp. 2d 211, 233 (N.D.N.Y. 2002) ("This diminished expectation of privacy of these admittees is what society is prepared to

state a claim regarding the searches of his room.  *See, e.g.*, *Swearengin*, 2022 WL 16527241, at *18 (civilly committed patient's cell search claim dismissed under § 1915(e)(2)(B) because no reasonable expectation of privacy in his room).

### 4. Strip searches and pat-down searches

Plaintiff alleges that he is sometimes strip searched.

"[I]nvoluntarily committed civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012) (citing *Serna v. Goodno*, 567 F.3d 944, 948-49 (8th Cir. 2009)).  And "'[a]lthough an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner.'"  *Id.* (quoting *Revels*, 382 F.3d at 874).  To determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails."  *Bell*, 441 U.S. at 559.  "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Id.*

Because Plaintiff offers no reason that the strip searches were unreasonable in any way, he fails to state a claim.  *See, e.g.*, *Swearengin*, 2022 WL 16527241, at *15 (civilly committed patient's claim concerning strip searches dismissed where he failed to show that they were unreasonable).

Plaintiff also alleges that he is subjected to pat-down searches and that Defendant Douglas has "been performing uncomfortable pat downs," with "caressing/stroking me down slow," making Plaintiff "feel" that they are "uncomfortable and in a sexual manner."  That a civilly

---

recognize as reasonable given the societal interest in protecting the health, safety, and welfare of the patients and staff of these units who would be detrimentally affected without sufficient precautionary measures.").

committed patient is subjected to pat-down searches does not raise a constitutional claim. *Anderson v. DaCosta*, No. CIV.A. 10-5835 PGS, 2011 WL 2223713, at *8 (D.N.J. June 1, 2011) ("Anderson's general allegation that group movement is monitored and restricted [including pat-down searches], without more, fails to articulate a cognizable claim of constitutional magnitude[.]").  Instead, a "detainee must allege facts, 'other than his own perceptions,' that indicate the pat down contact was some 'sort of sexual proposition or harassment.'"  *Fisher v. Murry*, No. 3:20CV905-HEH, 2022 WL 1785239, at *2 (E.D. Va. June 1, 2022) (quoting *Ellis v. Elder*, No. 7:08CV00642, 2009 WL 275316, at *3 (W.D. Va. Feb. 4, 2009)).  Pat-down searches, by their nature involve touching essentially the entire body of the person being searched sufficiently carefully to ensure that no contraband is hidden.  Plaintiff only points to what he terms the "caressing/stroking" nature of Defendant Douglas's searches that makes him "feel" that it is "sexual."  He does not allege any objective reason why they are.   As such, Plaintiff fails to state a claim on which relief may be granted.

### 5. Legal mail

Plaintiff alleges that "officers" take his legal mail and that Defendant Jackson reads his legal mail and sometimes never brings it back.

"As in the prison setting, a psychiatric facility may impose restrictions on an involuntarily committed plaintiff's access to mail that are narrowly tailored to promote the state facility's legitimate interests in security, order, and treatment."  *Williams v. NYS Off. of Mental Health*, No. 10CV1022, 2017 WL 11709993, at *8 (E.D.N.Y. Aug. 29, 2017) (citations omitted), *report and recommendation adopted*, 2018 WL 6584904 (E.D.N.Y. Dec. 14, 2018).  The Second Circuit has held that a civilly committed patient "must show regular and unjustifiable interference with incoming legal mail;" in other words, "the actions of facility staff in restricting civilly committed

individuals' access to legal mail are justified if they advance or protect the state's interest in security, order, or treatment and the restrictions imposed are no greater than necessary to advance the governmental interest involved." *Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012); *see also Horacek v. Seaman*, No. 08-10866, 2013 WL 5291440, at *10 (E.D. Mich. Sept. 19, 2013) ("Because plaintiff [(a detainee)] has failed to point to any evidence that the opening of his legal mail outside his presence, if it occurred, was intentional or arbitrary as opposed to merely negligent, defendants are entitled to summary judgment.").

The Court will allow Plaintiff to amend his complaint to provide additional information regarding his legal mail claim, including whether his legal mail was opened outside of his presence, how many times Defendant Jackson read and did not return it, whether his legal mail was incoming or outgoing, and what the nature of the legal proceeding was that it related to. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (Under Federal Rule of Civil Procedure 15(a), "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act].").

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims against KCPC and Officer Matthew Douglas are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted and/or for seeking monetary relief against a D\defendant immune from such relief pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

The Clerk of Court is **DIRECTED** to terminate KCPC and Officer Matthew Douglas as parties to this action.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint **within 30 days** of entry of this Order to provide additional information regarding his legal mail claim, including whether his legal mail was opened outside of his presence, how many times Defendant Jackson read and did not return it, whether his legal mail was incoming or outgoing, and what the nature of the legal proceeding was that it related to.

Plaintiff is **WARNED** that his failure to file an amended complaint within the time allotted will result in dismissal of his legal claim for the reasons set forth herein.

The Clerk of Court is **DIRECTED** to send Plaintiff a *pro se* prisoner § 1983 civil-rights complaint with this case number and "AMENDED" affixed thereto.

Date:   October 23, 2024

Charles R. Simpson III, Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
4411.009

10